IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

            Plaintiff,

Vs.                                                   No.  05-40065-01-SAC

TRACY M. SMITH,

            Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's motion to review the magistrate judge's decision denying her pretrial release.  (Dk. 14).  The magistrate judge conducted a detention hearing on July 27, 2005, pursuant to 18 U.S.C. § 3142(f), and then entered an order of detention on the same day.  (Dk. 6). The stated reason for detention was the magistrate judge's finding by clear and convincing evidence "that no condition or combinations of conditions will reasonably assure the safety of any other person or the community."  (Dk. 6). Prior to his allowed withdrawal from this case, the defendant's former counsel filed this motion for review arguing that the defendant was unable to present facts and information which were subsequently disclosed during discovery and which should be considered in deciding the issue of pretrial release.  The defendant's motion

does not lay out or proffer those additional facts or information relevant to this proceeding. The government has filed a response opposing the defendant's release. (Dk. 24).

At the hearing before this court, the government's counsel relied on the record made before the magistrate judge, addressed one new circumstance, and then summarized his presentation below. The defendant relied on her brief and the arguments made before the magistrate judge. The defendant also questioned the reliability and weight of evidence proffered by the government, disputed the truthfulness of several reported incidents regarding violence, and proposed release on terms involving electronic monitoring, curfew or house arrest. As for her connections to the community, the defendant offered that she has lived in the Topeka area for some time and owns a clothing store here which she operated before her detention. Though others have been trying to keep the store operating, the defendant doubts that it will remain viable should her detention continue.

**STANDARD OF REVIEW**

By statute, 18 U.S.C. § 3145(b), a defendant detained by a magistrate judge may seek review before the district court having original jurisdiction of the charged offense. This is a de novo review of the magistrate judge's order. *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002) (and cases cited

therein). The district court decides both the facts and the propriety of detention anew without deference to the magistrate judge's findings. *Id*. De novo review does not require a de novo evidentiary hearing. *Id*. The district court may elect to "start from scratch" and hear the relevant evidence, or it simply may incorporate the record of the proceedings conducted by the magistrate judge including the exhibits admitted there. *Id*. In its discretion, the district court may conduct evidentiary hearings if "necessary or desirable" whether or not new evidence is to be offered. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990).

**CONTROLLING LAW**

Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., the court must order an accused's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and community." *See* 18 U.S.C. § 3142(b),(c), and (e). The government must prove dangerousness to any other person or the community by clear and convincing evidence. *United States v. Burks*, 141 F. Supp. 2d 1283, 1286 (D. Kan. 2001) (and cases cited therein). In making this determination, the court is to consider "the available information" on the following four factors: the nature and circumstances of the offense, including whether the offense is a crime of violence or involves a

narcotic drug; the weight of the evidence; the history and characteristics of the person; and the nature and seriousness of the danger to any person or the community posed by a release on conditions. 18 U.S.C. § 3142(g).

The Bail Reform Act, specifically 18 U.S.C. § 3142(e), recognizes a rebuttable presumption of risk of flight or danger to the community upon a finding "that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act (21 U.S.C. §§ 801 et seq.), . . . ."  A grand jury indictment charging such an offense is enough to trigger this presumption.  *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991); *United States v. Walters*, 89 F. Supp. 2d 1217, 1220 (D. Kan. 2000).  The presumption operates as follows:

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

*Stricklin*, 932 F.2d at 1354-55 (citations omitted).

The defendant's motion takes no position on the rebuttable presumption.  Count one of the indictment charges the defendant with conspiracy "to distribute controlled substances, including but not limited to approximately 32

4

grams of cocaine base" in violation of 21 U.S.C. § 846 with reference to 21 U.S.C. § 841(a)(1) and (b)(1)(A). Count one charges an offense under the Controlled Substances Act that carries a maximum term of imprisonment of ten years or more as prescribed thereunder.

The defendant's initial "'burden of production . . . is to offer some credible evidence contrary to the statutory presumption.'" *United States v. Walters*, 89 F. Supp. 2d at 1220 (quoting *United States v. Miller*, 625 F. Supp. 513, 519 (D. Kan. 1985)). Of course, the burden of proof remains with the government to show there is no condition or combination of conditions that would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community. *United States v. Lutz*, 207 F. Supp. 2d at 1251.

**ANALYSIS AND RULING**

This ruling relies on the record that was provided at the initial detention hearing before the magistrate judge and later summarized to the district court. The ruling considers the arguments that were advanced orally and in writing before the magistrate judge and the district court. Counsel also has informed the court of the proceedings and strategy with respect to the double murder trial in state court and the defendant's refusal to testify in it.

*Nature and Circumstances of the Offense*

The twenty-six counts in the indictment charge the defendant with acts of drug trafficking and other offenses related to drug trafficking. The conspiracy to distribute controlled substances, including cocaine base, charged in count one is alleged to have occurred sometime before October 15, 2003, to sometime after June 2, 2005. These charges evidence a clear and convincing pattern of frequent and continuous sales of cocaine base, the use of a residence and a business to store and distribute the cocaine base, the use of residential and business telephones to facilitate the distribution, and an extensive and deep involvement in drug trafficking activity that would endanger a community. The amount of drugs charged in the conspiracy count trigger a ten-year mandatory minimum, but the defendant's prior felony drug conviction also qualifies her for the twenty-year mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(A). This factor favors detention.

*Weight of the Evidence*

The weight of the evidence against the defendant is quite substantial. According to the government, each of the distribution counts is based on a controlled purchase of cocaine base from the defendant's employees or business associates or the defendant herself. For the most part, the sales were arranged after telephone calls to the defendant's business or residence. The defendant personally

6

participated in some of those calls.  On three different occasions, officers with the Shawnee County Sheriff's Department seized and searched trash sitting at the defendant's residence and found discarded plastic baggies with their corners cut that contained white powdery or chunky residue which tested positive for cocaine or cocaine base.  Search warrants executed at the defendant's home and business turned up some controlled substances, drug-related items, and large amounts of currency.  This factor weighs in favor of detention.

*History and Characteristics of the Defendant*

At the initial hearing, the government introduced evidence about several different incidents during which the defendant displayed violent and vindictive behavior.  In June of 2004, there was a domestic violence report in which the defendant was said to have punched and grabbed her lover by the throat and then threatened the victim and victim's mother.  In January of 2005, Rodney Lynch, who is known to associate with the defendant, came to the hospital with stab wound to his chest.  At that time, Lynch did not identify the person who had stabbed him.  Sometime later after he and the defendant were arrested in Mississippi in possession of drugs, Lynch decided to cooperate with Kansas law enforcement and revealed that the defendant had stabbed him and that he previously withheld this information in fear of the defendant's violent reaction.

7

The government also has proffered evidence of a double homicide of two women and gunshot wounds to a third woman that occurred in December of 2003. The government has evidence that the defendant may have directed or hired the gunman, Phillip Cheatham, who was recently convicted of this offense. The jury also returned a finding that recommended the death penalty for Cheatham. The evidence includes telephone calls between the defendant and Cheatham contemporaneous with the homicide, a cooperating witness's statement that Cheatham had said he killed the women at the defendant's direction, and one victim's identification card and bank card were found at the defendant's residence when it was searched two days after the murders. Lynch told officers that the defendant had wanted Cheatham only to scare the women, because she believed the women had stolen money and drugs from her.

In May of 2005, the defendant was arrested in Mississippi along with Rodney Lynch. They were found in possession of marijuana, numerous prescription drugs, and $7,000 in cash. When she was processed by Mississippi officials, she told them that she did not own any real property, vehicles, or bank accounts. The government has proffered evidence that the defendant did own such items at the time of her statement. Lynch subsequently told officers that he and the defendant had went to Mississippi to avoid the defendant's compliance with the

8

subpoena issued for her in the double homicide case. When the defendant appeared to testify in the state trial pursuant to a government subpoena, the defendant refused to testify even after the State provided her with immunity. The state trial judge found her in contempt and detained her.

During a telephone call with the case agent in June of 2005, the defendant refused to come into the law enforcement center and talk. She told the agent that she would kill herself before going back to prison.

These circumstances and the proffered evidence supporting them heavily favor detention.

*Nature and Seriousness of Danger to Any Other Person or the Community*

In May of 2005, officers were called to a women's facility with the Kansas Department of Corrections because the defendant was trying to contact an inmate at the facility. The surviving female victim who suffered gunshot wounds during the double homicide incident was located at this facility. The defendant denies that she was involved in this incident, as she was incarcerated in Mississippi at the time.

The case agent has been contacted by one of the witnesses who testified before the grand jury which returned the indictment in this case. The witness told the agent that the defendant had called him shortly after his testimony

9

on the same day in July of 2005.  The defendant told the witness that she knew she was the subject of a grand jury investigation, that he appeared to be a part of it, and that she had been outside the federal courthouse watching for others who might be cooperating with the government.  The witness also said that he has been receiving telephone calls from unknown persons who call him a "snitch."

The court believes the defendant's pattern of criminal conduct demonstrates a very real threat of continued involvement in drug trafficking and of violence to witnesses or persons cooperating in this investigation.  Besides the serious danger to the community by ongoing drug trafficking, the evidence shows a history of violence and vindictiveness that places others in immediate and serious danger as well.  There is nothing in the record from which the court can find assurance that the defendant would abandon her drug trafficking activities and support herself through lawful and gainful employment. This factor strongly supports detention.

*Conclusion*

The court has no confidence that the defendant's proposed plan would meet the important concerns of the danger the defendant poses to the community, herself and others and her risk of flight as evidenced by her earlier flight to Mississippi.  As the magistrate judge observed, the defendant lacks

significant family or community ties to this district, her criminal record is substantial, and she is without meaningful financial resources to support herself.

Based upon its de novo review of the record and arguments submitted, the court finds that a preponderance of the evidence shows there is a serious risk the defendant will flee and that clear and convincing evidence establishes there are no set of conditions of release which will protect the community from the danger of the defendant engaging in additional drug trafficking crimes or acting violently towards others.  The defendant's proffered excuses for her actions are not credible evidence as to rebut the presumption of risk of flight or danger to the community and others.  After careful consideration of all matters submitted at the hearing within the framework required by the Bail Reform Act, the court concludes that the government has carried its burden of proving that pretrial detention is warranted in this case.

IT IS THEREFORE ORDERED that the motion to review (Dk. 14) the detention order is granted insofar as the court has conducted its de novo review and is denied as to all relief requested therein;

IT IS FURTHER ORDERED that the defendant will be detained pending trial pursuant to this order and to the order of detention entered by the magistrate judge.

11

Dated this 13th day of September, 2005, Topeka, Kansas.


                s/ Sam A. Crow
                Sam A. Crow, U.S. District Senior Judge