IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                              **Case No. 05-40065-01-RDR**

TRACY M. SMITH,

        Defendant.

## MEMORANDUM AND ORDER

This matter is presently before the court upon defendant's motion to dismiss Indictment (Doc. # 13) and defendant's motion to dismiss counts one through five of the Indictment (Doc. # 53). The court has heard evidence on the issues raised in these motions and is now prepared to rule.[1]

In the Indictment, the defendant is charged in twenty-two counts. The Indictment also contains a forfeiture count. The defendant is charged with one count of conspiracy to distribute controlled substances, nine counts of making a building available for storing and distributing controlled substances, ten counts of distributing crack cocaine, and two counts of using a communication facility to facilitate the distribution of controlled substances.

---

[1] Following the court's hearing on November 1, 2006, the defendant filed an ex parte motion for subpoena duces tecum of witness and a motion for an additional evidentiary hearing. In these motions, the defendant sought to present another witness to address one of the issues raised in the motions to dismiss. Based upon its determination of these motions in this order, the court finds it unnecessary to issue the subpoena and hear additional evidence on these motions. Accordingly, these motions shall be denied as moot.

In the forfeiture count, the government seeks a money judgment of $2,000,000, the forfeiture of certain real estate, and the forfeiture of $38,205.00.

In these motions, the defendant seeks to dismiss based upon an agreement that she struck with law enforcement on December 17, 2003 to provide information concerning a murder in Topeka.  She contends that the agreement provided her with immunity from drug-related charges and that the government violated that agreement by filing the instant Indictment after she provided the requested information.  In the initial motion, the defendant sought dismissal of all the charges contained in the Indictment.  In the subsequent motion, she sought only dismissal of Counts one through five of the Indictment.

The government admits that an agreement was reached, but contends that dismissal is not appropriate for several reasons. The government notes that the agreement only provided that drug charges prior to December 17, 2003 would not be filed if the defendant provided complete and truthful information concerning the murder that led to charges being filed against Phillip Cheatam. The government suggests that the defendant's arguments should be confined only to conduct that occurred prior to December 17, 2003, which means only Counts two through five and a portion of Count one.  The government further argues that dismissal is not appropriate because (1) the law enforcement officers who conducted

the interview of the defendant on December 17, 2003 did not have the authority to grant informal immunity to the defendant; and (2) even if the officers had authority to grant immunity, the government could proceed in this case because the defendant did not perform her part of the agreement, i.e., she lied to officers during the interview and failed to cooperate by refusing to testify at the Cheatam trial.

Based upon the evidence presented to this court, as well as the prior evidence presented at the hearing before Judge Crow, the court makes the following findings of fact and conclusions of law.

*Findings of Fact*

1.   In December 2003 Phillip Higdon, a sergeant with the Shawnee County Sheriff's Department, became aware of a multiple homicide in Topeka, Kansas. Sgt. Higdon received information that the defendant might be involved or have some knowledge concerning the homicide. Sgt. Higdon had previously been investigating the defendant for possible drug trafficking.

2.   On December 15, 2003 search warrants were executed at the defendant's business and residence. While the search warrant was being executed at the defendant's business, Sgt. Higdon spoke with the defendant and asked her if she would be willing to talk to law enforcement about the homicide. The defendant indicated that she was willing to talk, but she wanted her attorney, Chris Cowger, present. Cowger arrived at the store during the execution of the

warrant. Sgt. Higdon made it clear that if the defendant would cooperate in the homicide investigation, then he would not pursue any drug charges against her. Cowger told Sgt. Higdon that the defendant was willing to talk, but he wanted to talk with her before any interview occurred.

3. Cowger and the defendant went to the Topeka Law Enforcement Center on December 17, 2003. They initially met with Sgt. Higdon. Sgt. Higdon reiterated that if the defendant would be willing to provide a truthful statement concerning the homicide, then drug trafficking charges would not be filed by federal or state authorities on the information gathered up to that date. Sgt. Higdon had made no arrangements with federal or state prosecutors prior to the time he offered the deal. Smith agreed to provide a statement on the homicide.

4. The defendant, along with her attorney, then moved to the police department area of the Law Enforcement Center. There, they met with Officer Brian Hill, who was the lead investigator for the City of Topeka police department on the homicide case. Smith proceeded to give a statement which was written down by Cowger. In the statement, the defendant provided information concerning her knowledge of the homicide, including information on Phillip Cheatam, who at that time law enforcement believed had perpetrated the murders.

5. Cheatam was eventually charged and convicted of the

murders. He received the death penalty. The defendant was called as a witness by the State of Kansas at trial, but she refused to testify, exercising her Fifth Amendment rights. She was held in contempt by the trial judge.

   6. Subsequently, Sgt. Higdon reached the conclusion that the defendant had not been truthful concerning the information provided on the homicide. He thought she had not been truthful in the following ways: (a) she indicated in the statement she had only two phone conversations with Cheatam at the time of the homicide, but a subsequent search of phone records showed that the defendant had contacted Cheatam seven or eight times around the time of the homicide; (b) she withheld information that she had visited the scene of the homicide on the night that it happened; and (c) she indicated the drugs that were stolen that may have led to the homicide belonged to Cheatam and not to her. He also believed that the defendant had violated the cooperation agreement by failing to testify at Cheatam's trial. Based upon these determinations, he submitted the information he had gathered to the United States Attorney's Office for prosecution.

   7. The defendant was indicted in this court on the instant charges on July 14, 2005.

*Conclusions of Law*

   1. "Cooperation agreements, like plea agreements, function as an 'essential part' of the criminal justice process and are 'highly

desirable' as a means to assist law enforcement investigative efforts." United States v. Pinter, 971 F.2d 554, 557 (10th Cir. 1992), cert. denied, 510 U.S. 900 (1993).  A cooperation agreement is analogous to a plea bargain agreement.  Id.; United States v. Carrillo, 709 F.2d 35, 36 (9th Cir. 1983).  Promises made in such agreements "whether directly or indirectly made" should be fulfilled to their fullest extent.  Pinter, 971 F.2d at 557.  As a general rule, an agreement to cooperate should be analyzed in terms of contract law standards, much like a plea agreement.  Carrillo, 709 F.2d at 36.  The construction of such agreements requires determining what the defendant reasonably understood when the agreement was executed.  Pinter, 971 F.2d at 557.

    2.  Fundamental fairness may require the government to honor promises that its agents have made in situations that are analogous to a plea bargain.  United States v. Streebing, 987 F.2d 368, 372 (6th Cir.), cert. denied, 508 U.S. 961 (1993).  However, an agent must be authorized to make the promise, and the defendant must rely to his detriment on the promise.  Id.  "If either part of the showing fails, the promise is unenforceable."  United States v. Flemmi, 225 F.3d 78, 84 (1st Cir. 2000), cert. denied, 531 U.S. 1170 (2001).

    3.  The remedy for breach of a cooperation agreement rests within the sound discretion of the court.  See Santobello v. New York, 404 U.S. 257, 263 (1971); Carrillo, 709 F.2d at 37.

4. There is little dispute that an agreement was reached between the defendant and Sgt. Higdon. However, even though an agreement was reached, we do not find that it was binding on the federal government. The court is not persuaded that Sgt. Higdon had the authority to bind the federal prosecutors. Without such authority, Sgt. Higdon could not bind the federal government in this case. United States v. Glauning, 211 F.3d 1085, 1087 (8th Cir. 2000) (state and local government officials have no power to bind the federal government); United States v. Sparks, 87 F.3d 276, 279 (9th Cir. 1996) (state prosecutors' agreements with defendant not binding on federal prosecutors), cert. denied, 522 U.S. 1139 (1998); United States v. Roberson, 872 F.2d 597, 611 (5th Cir.) (state prosecutor could not bind federal prosecutor), cert. denied, 493 U.S. 861 (1989); United States v. McIntosh, 612 F.2d 835, 837 (4th Cir. 1979) (bare representation by unauthorized party cannot bind federal prosecutors to forego prosecution). With this decision, the court need not consider whether the defendant carried out her part of the agreement.

5. Based upon the foregoing, the defendant's motions to dismiss must be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss Indictment (Doc. # 13) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss counts one through five of the Indictment (Doc. # 53) be hereby

7

denied.

**IT IS FURTHER ORDERED** that defendant's ex parte motion for subpoena duces tecum of witness (Doc. # 156) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion for evidentiary hearing as to defendant's motion to dismiss Counts 1 through 5 (Doc. # 153) be hereby denied.

**IT IS SO ORDERED.**

Dated this 7th day of November, 2006 at Topeka, Kansas.

                                          s/Richard D. Rogers  
                                          United States District Judge