# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.                    **Case No. 05-40065-01-RDR**

TRACY M. SMITH,

        Defendant.

---

## MEMORANDUM AND ORDER

This matter is presently before the court upon the defendant's pro se motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

I.

The defendant was originally charged, with co-defendant Dennis Torrence, in a 26-count indictment on July 14, 2005. The case was assigned to Judge Sam Crow. The defendant initially retained counsel to represent her. Her original counsel was then allowed to withdraw. She then sought court-appointed counsel. Several attorneys were thereafter appointed, but each withdrew. Finally, on June 2, 2006, the court appointed Thomas D. Haney to represent her.

Torrence entered a guilty plea before Judge Crow on October 4, 2005. He entered a plea to conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 [Count 1]. On May 3,

2006, Judge Crow recused from this case. The case was then reassigned to me.

The defendant's trial began on January 22, 2007. On February 13, 2007, a jury convicted the defendant of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 [Count 1]; managing or controlling a building (2820 SE Maryland in Topeka, Kansas) for the purpose of using, storing or distributing a controlled substance in violation of 21 U.S.C. § 856 [Counts 3 and 4]; managing or controlling a building (516 SE 29th Street in Topeka, Kansas) for the purpose of using, storing or distributing a controlled substance in violation of 21 U.S.C. § 856 [Counts 5, 13, 20, 22 and 24]; distributing controlled substances in violation of 21 U.S.C. § 841(a)(1) [Counts 12, 15, 17, 18, 19, 21 and 23]; and using a communication facility to facilitate conspiracy to distribute controlled substances and distribution of controlled substances in violation of 21 U.S.C. § 843(b) [Counts 14 and 16]. The jury found the defendant not guilty of one count of managing or controlling a building (2820 SE Maryland in Topeka, Kansas) for the purpose of using, storing and distributing a controlled substance in violation of 21 U.S.C. § 856. The jury did not reach a verdict on four counts, and the court declared a mistrial on those charges. Following the verdict, the parties notified the court they had agreed that a decision on forfeiture would be made by the undersigned judge, not by the jury. The parties subsequently

informed the court they were involved in negotiations that would probably result in a settlement of the forfeiture issues. The court signed a preliminary order of forfeiture on June 14, 2007.

Following her conviction, the defendant filed a motion for new trial. She raised a variety of arguments, but the court rejected them in a written order on April 13, 2007. United States v. Smith, 2007 WL 1115200 (D.Kan. 2007). The defendant then filed a "supplemental brief" in support of her motion for new trial. This brief raised some new arguments. The court rejected these arguments in an order on July 2, 2007.

The court sentenced the defendant on June 28, 2007. United States v. Smith, 2007 WL 1893929 (D.Kan. 2007). The defendant appealed her conviction and sentence. The Tenth Circuit affirmed on July 23, 2008. United States v. Smith, 534 F.3d 1211 (10th Cir. 2008). The Supreme Court denied certiorari on December 1, 2008. Smith v. United States, 129 S.Ct. 654 (2008). The defendant filed the instant motion on September 8, 2009.

II.


The facts of this case as set forth by the Tenth Circuit in its opinion are as follows:

> The investigation of Ms. Smith began with a series of "trash pulls"--or seizures of the garbage from Ms. Smith's home--in the fall of 2003. Over the course of three trash pulls, Shawnee County (Kansas) Sheriff's deputies found plastic baggies with cocaine residue, other drug paraphernalia, and mail addressed to Ms.

Smith. Deputies also conducted surveillance of Ms. Smith's business, TeRay's, a clothing store in Topeka. The deputies observed, among other things, what they considered to be counter-surveillance activity, indicating that Ms. Smith and her employees were aware that the police may have been watching them, or were at least trying to prevent such surveillance.

On December 13, 2003, two women were murdered and one was severely injured in a shooting at a Topeka residence. Phillip Cheatham, a local drug dealer, was later convicted of these murders. Annetta Thomas (the surviving victim) indicated that Mr. Cheatham was known within the community to be Ms. Smith's "flunkie" or "punk." Topeka Police Department homicide detectives came to suspect that Ms. Smith was involved in the murders, so they obtained warrants and conducted searches of both Ms. Smith's home and her business on December 15. In her home, they found a notebook with records of drug sales, approximately $14,000 in cash, and a credit card belonging to one of the murdered women. At TeRay's (Ms. Smith's store), they found one 9mm bullet, $1200 in a candy bowl beneath the front counter, $262 in the cash register, and several digital scales. The detectives later returned the $14,000 to Ms. Smith, hoping it would encourage her to speak with them. She agreed.

On December 17, she presented herself at the police department, along with her attorney, Chris Cowger. She brokered an agreement with the detectives to provide truthful information, and in exchange she would not be charged with any drug-related offenses that occurred prior to the murders. However, Ms. Smith breached her cooperation agreement--most notably she failed to deliver promised information about a possible second shooter. Mr. Cowger later testified against Ms. Smith, telling the jury that while representing Ms. Smith, he bought small quantities of marijuana from her at her home and TeRay's. Ms. Smith did not know Mr. Cowger was going to testify against her until the prosecution called him as its last witness.

After Ms. Smith breached her cooperation agreement, officers continued to investigate her drug activities, primarily through the use of informants. One informant was Lester Campbell. Mr. Campbell went into TeRay's, asked Ms. Smith about purchasing "dope," and left his phone number. That same day, Mr. Torrence (Ms. Smith's alleged co-conspirator), who did not previously have Mr. Campbell's phone number, called Mr. Campbell about purchasing crack. In cooperation with police, Mr.

Campbell then purchased crack from Mr. Torrence three times that month.

Another informant was James Jensen. Mr. Jensen had been purchasing drugs from Ms. Smith for a few months up to the date of the double homicide. After the homicide, Mr. Jensen approached police and offered to provide information. He later made three controlled buys--two of crack and one of methamphetamine--from Ms. Smith that month. Mr. Torrence delivered the methamphetamine, after Mr. Jensen arranged the purchase from Ms. Smith.

A third informant was Sharriff Tilghman. Mr. Tilghman made four controlled buys from Ms. Smith, at least two of which were delivered by Mr. Torrence.

Officers searched Ms. Smith's home again in June 2005, finding a scanner and several photos of police officers, believed to be used for counter-surveillance purposes. Officers also found approximately $20,000 hidden in a crawl space.

In addition to the informants, the government presented several other witnesses, most importantly Mr. Torrence, who pleaded guilty to being a co-conspirator of Ms. Smith's. He testified that he had grown up with Ms. Smith and had dated her. He rented an apartment in her garage, and described Ms. Smith as "the kingpin" of the operation for which he worked. His role was to sell and deliver crack for Ms. Smith. He delivered drugs to several people, including Mr. Cheatham (who was convicted of the double murder), and sold it from TeRay's as well. Mr. Torrence also testified that a few days before the murders, he heard Ms. Smith and Mr. Cheatham saying that someone had stolen money from Mr. Cheatham, and he saw Mr. Cheatham crying. Mr. Torrence asked Ms. Smith what was wrong, and she replied, "if he allow-let somebody take $15,000 from me and nine ounces of dope, he a wuss and I don't need nobody on my team like this...."

There were various other witnesses to the conspiracy who testified. James Worford testified that he would arrange drug transactions with Ms. Smith and Mr. Torrence would deliver them. He also testified that Ms. Smith had a little notepad, just like the one police recovered at her house, where she would keep track of their transactions. Steven Bell testified that he knew Mr. Cheatham was working for Ms. Smith. He saw Ms. Smith through a window at a federal holding facility, when she made two gestures to him: one indicating that she knew Mr. Bell was "snitching" and the other indicating that she would kill him for doing so. Ronald Redmond was an inmate who had been in a holding cell neighboring Ms.

Smith's. He testified that Ms. Smith bragged about being a "major drug figure." Mr. Redmond further testified that when he noted she would get robbed if she was a woman making so much money in Chicago, where he was from, "she gave like a chuckle, like, 'Huh, some bitches down here tried that before . . . but . . .I had those bitches murdered.'"

Annetta Thomas, the woman who was seriously injured during the double murder, also testified. She stated that she and one of the women who was killed were lovers and that she (Ms. Thomas) and Ms. Smith were good friends. Ms. Thomas was living with Mr. Cheatham at the time of the murders, and knew he was an underling in Ms. Smith's drug business. She saw him prepare and sell the drugs with Ms. Smith, and she personally purchased crack from Ms. Smith on several occasions. She also testified that prior to the shooting, Mr. Cheatham told her that a safe was missing from his room, but would not tell her its contents. He called Ms. Smith, who came over to Ms. Thomas's apartment and asked Ms. Thomas if she had taken it, "[b]ecause it was mine." Mr. Cheatham ultimately told Ms. Thomas that the safe had $10,000 in it. On the night of the shooting, Mr. Cheatham shot Ms. Thomas at least seven times, until she played dead. After Mr. Cheatham left, she dragged herself to the door to call for help.

Smith, 534 F.2d at 1215-17 (citations to record omitted).

III.

In this motion, the defendant raises essentially ten claims. She argues that her counsel was ineffective because he failed: (1) to argue at sentencing and on appeal that the court erroneously calculated her criminal history points; (2) to challenge at sentencing and on appeal the court's enhancement of her offense level pursuant to U.S.S.G. § 3C1.1; (3) to challenge at sentencing and on appeal the court's enhancement of her offense level pursuant to U.S.S.G. § 3B1.1(a); (4) to argue at trial and on appeal the exclusion of African-Americans in the jury pool and on the jury

panel; (5) to properly preserve on appeal the "sufficiency of evidence" issue; (6) to properly preserve on appeal the cumulative error" issue; (7) to challenge at trial, sentencing and on appeal the calculation of her drug quantity threshold; (8) to allow her to speak to the court at sentencing; (9) to argue at sentencing in mitigation of her sentence and for application of acceptance of responsibility points; and (10) to challenge at trial, sentencing and on appeal the forfeiture of her property.

A federal prisoner may only obtain relief under § 2255 if his sentence (1) was imposed in violation of the Constitution or federal laws, (2) was imposed by a court without jurisdiction to do so, (3) was in excess of the maximum permitted by the law, or (4) is otherwise subject to attack. 28 U.S.C. § 2255(a). In order to obtain relief under § 2255 on the basis of constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993). In order to obtain relief on the basis of nonconstitutional error, the petitioner must show a fundamental defect in the proceedings resulting in a complete miscarriage of justice or an error so egregious that it amounted to a violation of due process. Reed v. Farley, 512 U.S. 339, 353-354 (1994). If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him

or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); United States v. Galloway, 56 F.3d 1239, 1240 n. 1 (10th Cir. 1995); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").  To be entitled to an evidentiary hearing, the defendant must allege facts which, if proven, would entitle him to relief.  See Hatch v. Oklahoma, 58 F.3d 1447, 1471 (10th Cir. 1995), cert. denied, 517 U.S. 1235 (1996).  "[T]he allegations must be specific and particularized, not general or conclusory."  Id.  The court finds that a hearing on the defendant's motion is not necessary.  The court finds, for the reasons stated in this opinion, that the materials already in the record conclusively show that the defendant is not entitled to relief on any of her claims.

"The benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To obtain relief on an ineffective assistance of counsel claim, a defendant must satisfy

a two-pronged test. First, he "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. To meet the first prong, a defendant must show that defense counsel's performance was neither reasonable under prevailing professional norms nor sound trial strategy. To meet the second prong, petitioner must show a reasonable probability that, but for the deficiencies in counsel's conduct, the result of the case would have been different. A probability is reasonable if it is sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. The court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." Cooks v. Ward, 165 F.3d 1283, 1292-93 (10th Cir. 1998), cert. denied, 528 U.S. 834 (1999); see also Davis v. Executive Director of Dept. of Corrections, 100 F.3d 750, 760 (10th Cir. 1996) (noting that court can proceed directly to prejudice without addressing performance), cert. denied, 520 U.S. 1215 (1997).

There is a strong presumption that counsel provided effective assistance of counsel, and the defendant has the burden of proof to overcome that presumption. United States v. Cronic, 466 U.S. 648, 658 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. The reasonableness of the counsel's performance must be evaluated at

the time of the alleged error. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986). "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision . . . must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" <u>Hatch v. State of Oklahoma</u>, 58 F.3d 1447, 1459 (10th Cir. 1995) (quoting <u>United States v. Ortiz Oliveras</u>, 717 F.2d 1, 4 (1st Cir. 1983)), <u>cert. denied</u>, 517 U.S. 1235 (1996). Neither hindsight nor success is the measure of the reasonableness of counsel's challenged conduct. <u>Hoxsie v. Kerby</u>, 108 F.3d 1239, 1246 (10th Cir.), <u>cert. denied</u>, 522 U.S. 844 (1997).

When the basis for an ineffective assistance of counsel claim is the failure to raise an issue, the court must look to the merits of the omitted issue. <u>United States v. Orange</u>, 447 F.3d 792, 797 (10th Cir. 2006). If the omitted issue is without merit, then counsel's failure to raise it is not ineffective assistance because the failure is not prejudicial. <u>Id</u>. "[T]he omission of a 'dead-bang winner' by counsel is deficient performance which may result in prejudice to the defendant. A 'dead-bang winner' is an issue which was obvious from the trial record and one which could have resulted in reversal on appeal." <u>United States v. Challoner</u>, 583 F.3d 745, 749 (10th Cir. 2009) (internal citation and quotations omitted).

A few comments are in order concerning the attorney who represented the defendant during the trial and on appeal in this

matter.  The defendant has indicated in an affidavit that Mr. Haney told her that "the only reason he was on my case was because the judge called and asked him as a favor to take my case."  She further averred:  "He said that I 'wasn't getting a BMW' with him and even though he normally gets $500.00 per hour, he wasn't making even $90.00 per hour on my case."  The court finds it unnecessary to determine the truth of these statements, but the court does find it necessary to provide some additional details.  The court did seek out Mr. Haney after several attorneys withdrew in this case.  The court did so in an effort to provide defendant an experienced and capable criminal defense attorney.  Mr. Haney had previously served as an assistant United States attorney in the District of Kansas from 1981 to 1985.  During that period, he worked exclusively in the criminal division.  He tried many cases in this court.  Since that time, he has represented numerous criminal defendants.  The court thought it was important to find able counsel for the defendant because of the very serious charges brought by the government here.  The implication of the aforementioned statements allegedly made by Mr. Haney is that although he is a top-flight attorney, he might not perform as such due to the lower hourly fee paid by the court.  Knowing Mr. Haney's past, the court doubts that he would defend a case based upon the amount of his fees.  Moreover, the court found that Mr. Haney's defense in this case was commendable.  He was well-prepared and he

did an effective job of pointing out problems in the government's case.  In any event, the court intends to examine the issues raised by the defendant under the guidelines established in <u>Strickland</u>.

IV.

**A.  Criminal History Points**

The defendant contends that her counsel was ineffective by failing to raise an issue on appeal concerning this court's calculation of her criminal history points.  She contends that her counsel should have appealed the finding that her criminal history score consisted of eight points, including three points for a 1983 conviction for criminal possession of a firearm.  She suggests that her counsel should have raised it on appeal because the determination of whether her 1983 conviction was within the fifteen-year period of U.S.S.G. § 4A1.2(e)(1) should have been made by the jury requiring proof beyond a reasonable doubt, not the court or the probation officer using a lesser burden of proof.

Following the defendant's conviction, defense counsel raised a number of objections to the presentence report.  Among these, counsel contended that the defendant's 1983 conviction for criminal possession of a firearm was time-barred because it was not within the fifteen-year period set forth in § 4A1.2(e)(1).  The court rejected the defendant's argument, finding that the circumstances show that this conviction was completed within fifteen years of the commencement of the instant offenses.

As suggested previously, defendant must show that she would have prevailed upon this claim on appeal.  The court finds that she cannot meet that burden.  The facts clearly demonstrate that her counsel would not have prevailed on this issue even if he had raised it because it is without merit.

Under § 4A1.2(e), the calculation of a defendant's criminal history category includes only those sentences of imprisonment exceeding one year and one month that were "imposed within fifteen years of the defendant's commencement of the instant offense" or "that resulted in the defendant being incarcerated during any part of such period." U.S.S.G. § 4A1.2(e)(1), (3); United States v. Randall, 472 F.3d 763 765-66 (10th Cir. 2006).

At sentencing, the trial court is not precluded from relying on judge-found facts in determining the applicable Guidelines range so long as the Guidelines are considered advisory rather than mandatory.  United States v. Townley, 472 F.3d 1267, 1276 (10th Cir.), cert. denied, 551 U.S. 1172 (2007).  The application of the Guidelines must be based upon facts proved by a preponderance of the evidence.  United States v. Magallanez, 408 F.3d 672, 685 (10th Cir. 2005).

Counts 1, 3, 4 and 5 of the indictment alleged that the defendant committed the offenses referenced therein on or before December 23, 2003, which was within fifteen years from December 23, 1998, when her sentence expired on the charge of criminal

possession of a firearm.  The evidence offered at trial showed all of these offenses were committed within fifteen years of defendant's criminal possession of a firearm conviction. Accordingly, the court's determination at sentencing was clearly supported by a preponderance of the evidence.  Thus, the Tenth Circuit would have clearly found this claim without merit on appeal.  The defendant cannot maintain that her counsel ineffectively failed to present this claim on appeal.

## B. Obstruction of Justice

The defendant contends that her counsel was ineffective at sentencing and on appeal for failure to challenge, preserve and argue that this court erred in applying a two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  The defendant suggests that her counsel was ineffective because he failed to offer certain evidence disputing this enhancement.

The government has responded that defense counsel did raise this issue before the trial court and on appeal.  The government contends that the court should deny this claim because the defendant raised the claim on appeal and the Tenth Circuit resolved it.

The defendant has responded that she understands that "a version of [this] issue was raised and rejected on direct appeal." She contends, however, that the essence of her claim is that her counsel failed to provide certain evidence on this issue.

At sentencing, the court enhanced the defendant's offense level pursuant to U.S.S.G. § 3C1.1 for obstruction of justice. The court found, based upon the evidence presented at trial, that the defendant had attempted to intimidate one of the government's witnesses, James Worford. In reaching that conclusion, the court stated:

> A review of Worford's testimony indicates that this enhancement should be applied. Worford testified that after he had testified before the grand jury, he received a telephone call from the defendant. During the call, the defendant asked him if he was "snitching." Later, he saw the defendant with another woman. At this time, the defendant again asked him if he was "snitching." Worford indicated the defendant did not make any direct threats, but he clearly believed that a threat was implicated by the question. Under these circumstances, the court is persuaded that the enhancement for obstruction under § 3C1.1 should be applied because the defendant attempted to intimidate or influence Worford's testimony. See United States v. Vaziri, 164 F.3d 556, 567 (10th Cir. 1999) (obstruction of justice enhancement properly applied because based upon circumstances, including timing and content, telephone call to witness was threat even though no direct threat was made). Accordingly, this objection shall be sustained and two levels shall be added to the defendant's offense level.

Smith, 2007 WL 1893929 at * 2.

The defendant misunderstands the facts that support this enhancement. She has suggested that her counsel failed to produce or mention the grand jury testimony of Worford where he testified that the defendant had not made any threats against him. The defendant contends that his testimony before the grand jury directly contradicts his testimony at trial.

The testimony at trial, upon which the court based the

15

enhancement, concerned matters that occurred *after* his grand jury testimony. Thus, the defendant's argument that her counsel was ineffective for failing to raise Worford's grand jury testimony that the defendant had made no threats against him prior to that time is simply irrelevant. The application of § 3C1.1 was appropriate here and the court finds no ineffective assistance of counsel.

## C. Organizer or Leader

The defendant contends that her counsel was ineffective because he failed to raise on appeal this court's application of the enhancement under U.S.S.G. § 3B1.1(a). The defendant argues that her counsel should have argued that the court incorrectly applied the enhancement when it found "only" that she "controlled the flow of drugs and used a variety of individuals." She contends that her counsel failed to argue that the court erred in not naming or finding any person over which she actually exercised control.

The government contends again this claim lacks merit because defendant cannot show that her counsel would have prevailed on this issue on appeal. The government notes that at trial "credible testimony showed that this conspiracy involved at least five participants, including the defendant, and that she led at least one and organized them all."

The defendant has failed to note that the court found, both in its oral ruling at sentencing and in its written order following

16

sentencing, the following: "The evidence presented at trial overwhelmingly established that the defendant played a leadership or organizational role in the drug conspiracy." The court found it unnecessary to name the individuals because the defendant had failed to suggest that the evidence showed that she failed to control the numbers necessary for an application of § 3B1.1(a). The evidence at trial clearly established that the defendant conspired with at least four others to distribute drugs: Dennis Torrence, Mike Prosper, Phillip Cheatam and Rodney Lynch a/k/a Peewee. The evidence on this issue was such that defense counsel could not have prevailed on appeal. Accordingly, the court finds that this claim is without merit.

**D. Batson Challenge**

The defendant contends that her counsel was ineffective at trial and on appeal for failure to challenge, preserve and correctly argue illegal exclusion of African-Americans in the jury pool and in the selection to the jury. Although the defendant acknowledges that her counsel raised a claim under Batson v. Kentucky, 476 U.S. 79 (1986) at trial, she contends that he ineffectively argued the issue before this court and on appeal. She points to the Supreme Court decisions in Snyder v. Louisiana, 552 U.S. 472 (2008) and Miller-El v. Dretke, 545 U.S. 231 (2005) as support for this claim.

The government contends that the defendant raised this issue

on appeal and the Tenth Circuit resolved it on the merits.  Thus, the government asserts that the defendant cannot reassert it in a § 2255 petition.

In considering the <u>Batson</u> issue in defendant's motion for new trial, the court recounted the following factual background:

> Smith is an African-American woman.  During jury selection, two African-Americans, both women, were placed in the jury box.  The government initially objected to the first woman based on cause.  The government contended that this potential juror had some knowledge of Smith's financial dealings because she was an employee of the bank where Smith had a bank account.  The government suggested that this knowledge might ultimately have some significance when the jury considered the forfeiture count in this case.  The government further noted that she may have been the employee who initially dealt with a subpoena that the government issued for Smith's bank records.  After conducting an <u>in camera</u> interview with this juror and hearing argument from counsel, the court overruled the government's challenge for cause and allowed this juror to remain.  The government did not later exercise a peremptory challenge on this juror.
> Another African-American woman was subsequently seated in the jury box.  After extensive questioning, the government exercised a peremptory challenge on this juror.  Smith's counsel immediately objected, contending that this challenge established a <u>Batson</u> violation.  The court was uncertain whether the defendant had established a prima facie case.  Nevertheless, the court asked the government to provide its reasons for the challenge.  Counsel for the government indicated that he had challenged the juror because (1) she had been terminated from her prior employment and was currently unemployed; and (2) she had gone to law school for a short period and therefore had some legal education.  The court determined that the defendant had failed to establish a <u>Batson</u> violation and allowed the government to strike her.

<u>Smith</u>, 2007 WL 1115200 at * 7.

In ultimately denying this claim in the motion for new trial, the court carefully considered the three-pronged requirements of

18

Batson.  Id. at * 7-8.  On appeal, the Tenth Circuit found no

Batson violation because the defendant had not met her burden of

showing discriminatory intent.  Smith, 534 F.3d at 1226.

The defendant now asserts that her counsel was ineffective in

raising this issue.  The exact particulars of this argument are

vague.  The defendant somehow suggests, relying upon Snyder, that

the court should have considered the juror's demeanor.  Here,

differing from Snyder, the government did not assert the juror's

demeanor as a basis for its challenge.  The court finds that Snyder

provides no support for the defendant's contention of ineffective

assistance of counsel concerning the Batson issue.

The defendant also suggests, relying upon Miller-El, that all

of the circumstances that "bore on racial animosity where(sic) not

properly evaluated."  The defendant fails to articulate what

circumstances were overlooked by her counsel, this court or the

Tenth Circuit.  The court believes that the defendant has failed to

demonstrate any showing of ineffective assistance of counsel on

this issue.

Finally, the defendant has argued that her counsel was

ineffective in failing to raise gender exclusion at trial and on

appeal.  As pointed out by the defendant, the Supreme Court has

extended Batson to women.  J.E.B. v. Alabama, 511 U.S. 127 (1994).

The defendant mentioned this issue in her motion for new trial.

There, the court rejected it, stating:

The focus of Smith's <u>Batson</u> challenge was the government's use of a peremptory challenge to exclude one African-American from the jury. However, Smith also suggests, albeit vaguely, that the government exercised peremptory challenges to strike women in violation of <u>Batson</u>. Smith failed to make any such argument at trial. Smith has failed to make a prima facie showing of intentional discrimination. The jury that reached a decision in this case consisted of five women and seven men. Both alternates who were released prior to deliberations were women. The government exercised only three peremptory challenges during voir dire, two of them were used to strike women. Nothing in these facts demonstrates a prima facie case of discrimination based upon gender. Accordingly, to the extent that Smith raises this argument, we must reject it.

<u>Smith</u>, 2007 WL 1115200 at * 8 n. 1.

The court continues to find that the defendant has not shown a prima facie case of intentional gender discrimination. Thus, the defendant has not demonstrated that her counsel was ineffective for his failure to raise the issue.

In sum, the court finds no merit to any of the issues raised by the defendant concerning the exclusion of jurors by the government.

**E. Insufficiency of the Evidence**

The defendant contends that her counsel was ineffective on appeal for abandoning her claim that the evidence was insufficient to support her convictions. She notes that her counsel did list the claim in his appellate brief, but did not argue it. She suggests that this claim is relevant in three areas: (1) the court erred in denying her motion for new trial at the close of the government's case-in-chief relating to "clearly duplicitous and

multiplicitous allegations and corresponding convictions of Counts 3-5, 13, 14, 16, 20, 22 and 24;" (2) the highly prejudicial illegal trash pulls used as a basis for Counts 1, 12, 15, 17, 18, 19, 21 and 23; and (3) the "unexplained and random" recusal of Judge Crow from her case. The government contends that, had this claim been raised by defendant's counsel on appeal, it would have been denied because the evidence against the defendant was overwhelming.

The exact nature of this claim is confusing due to the areas that defendant points to as support for her arguments. To the extent that she contends that her counsel was ineffective for failing to raise the issue of insufficiency of evidence on appeal, we find that she has not shown that her counsel performed ineffectively because she has not demonstrated that the evidence in support of her convictions was insufficient. The summary of the evidence noted by the Tenth Circuit on appeal clearly supports the convictions in this case.

The court finds a number of problems with the matters she raises as support for this issue. First, these matters do not involve sufficiency of the evidence. Rather, she suggests, at least with regard to the first two issues, that the court erred in allowing (1) duplicitous and multiplicitous counts to be considered by the jury and (2) evidence of illegal trash pulls. These are legal issues that should have been raised prior to trial. The third issue concerns the recusal of the first judge who was

assigned to this case.  The court has no power to require Judge Crow to continue with this case or to require him to provide reasons for his recusal.  Second, the defendant provides no factual or legal support for her contention that the court erred concerning any of these matters.

In sum, the court must deny relief to the defendant on this claim.

**F.  Cumulative Error**

The defendant contends that her counsel was ineffective on appeal for abandoning her claim that "cumulative error" required reversal of her convictions.  The defendant once again recognizes that her counsel listed this issue in his appellate brief, but failed to argue it.  The defendant contends that the cumulative effect of the following errors requires a new trial:  "(1) the gruesome murder photos, (2) the testimony of attorney Cowger, (3) the Steven Bell implied threat, (4) commentary of jailhouse snitch Redman, and (5) the perjured Worford testimony."

The government argues that even if her counsel did abandon the issue, he did not perform ineffectively because the cumulative-error claim is without merit.  The government points out that the defendant has failed to demonstrate that any errors were made by the court.  Moreover, the government asserts that even if the defendant could make out a claim of alleged errors, the cumulative effect of the errors was harmless because of the overwhelming nature of the

evidence.

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc). Therefore, "cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." Id. at 1471. An "error" means "any violation of an objective legal rule." Id. at 1470 n. 7. "[R]elief is warranted only if the errors alleged by [defendant] cumulatively 'infected the trial with unfairness as to make the resulting conviction[s] a denial of due process.'" Sam v. Hartley, 2009 WL 4918254 at * 6 (10th Cir. 2009) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

The defendant has failed to demonstrate that any of the errors noted were violations of an "objective legal rule." Even with respect to the photographs, the Tenth Circuit did not find that their introduction was in error. See Smith, 534 F.3d at 1220-21. In addition, the court is certainly not persuaded that the other matters noted by the defendant constituted error. In any event, the defendant was not denied due process on these matters since the testimonies of Bell, Worford, Redmond and Cowger were probative of the defendant's involvement in the conspiracy and the defendant had

ample opportunity to cross-examine them. Finally, even if the defendant could make out a claim of alleged errors, the cumulative effect of the errors was harmless, given the overwhelming nature of the evidence against the defendant. Accordingly, this claim is without merit because defendant has not demonstrated that she would have prevailed on appeal.

## G. Drug Quantity

The defendant contends her counsel was ineffective at trial, sentencing and on appeal for his failure to challenge, preserve and properly argue that an erroneous drug quantity was used to determine her sentence. Specifically, she points out that her counsel "was ineffective for the collective failure of permitting her to be accountable for drug quantity not alleged in the indictment nor found by the jury." She argues that a constructive amendment to the indictment was allowed when the verdict form allowed the jury to find (1) different quantities of crack cocaine rather than the 32 grams alleged in the indictment; (2) different quantities of methamphetamine rather the 4.94 grams of methamphetamine; and (3) a quantity of marijuana even though the indictment did not mention marijuana. The defendant contends that her base offense level should have been 30, not 32 as determined by the court.

The Tenth Circuit has explained constructive amendments as follows:

The prohibition on constructive amendments is derived from (1) the Fifth Amendment which limits a defendant's

jeopardy to offenses charged by a grand jury, and (2) the
Sixth Amendment which guarantees the defendant notice of
the charges against him. A constructive amendment occurs
when the Government, through evidence presented at trial,
or the district court, through instructions to the jury,
broadens the basis for a defendant's conviction beyond
acts charged in the indictment. To constitute a
constructive amendment, the district court proceedings
must modify an essential element of the offense or raise
the possibility that the defendant was convicted of an
offense other than that charged in the indictment. Where
an indictment properly pleads violation of a statute, and
the defendant was not misled about the nature of the
charges, his substantive rights are not prejudiced.

United States v. Van Tieu, 279 F.3d 917, 921 (10th Cir. 2002)

(citations omitted).

The court fails to find the issues raised by the defendant have

merit.  Thus, her counsel did not perform ineffectively by failing

to raise them in this court or before the Tenth Circuit.

The defendant has failed to demonstrate that this court's

instructions or the verdict form constructively amended the

indictment.  As noted previously, a constructive amendment occurs

when the essential elements of the offense contained in the

indictment are modified to broaden the possible bases for conviction

beyond what is contained in the indictment.  Here, the defendant was

charged in Count 1 with conspiring "to distribute controlled

substances, including but not limited to approximately 32 grams of

cocaine base. . ."  The language of the indictment clearly allowed

for several possible bases for the defendant's conviction, i.e., the

distribution of controlled substances other than cocaine base,

including methamphetamine and marijuana.  Thus, the verdict form's

25

reference to methamphetamine and marijuana did not constitute a constructive amendment.

Moreover, there was not a constructive amendment of the indictment when the court allowed the jury to find drug quantities of cocaine base, methamphetamine and marijuana. The "not limited to" language of the indictment permitted the jury to find both drug types and quantities beyond the charged "32 grams of cocaine base."

At sentencing, the court ultimately rejected the jury's findings concerning the amount of methamphetamine and marijuana. Smith, 2007 WL 1893929 at * 3. The court determined the defendant's offense level based solely on the amount of cocaine base found by the jury because the applicable amounts of methamphetamine and marijuana had no impact on the offense level. Id. The court continues to find that the offense level determined by the court, based upon the evidence and arguments before the court at that time, was proper. In sum, the court finds the defendant's claim without merit.

## H. Allocution

The defendant contends that her counsel was ineffective for failing to permit her to speak on her behalf at sentencing. The defendant contends that her counsel told her not to speak because it would damage her chances on appeal. She also suggests that the court erred in not personally addressing her at sentencing.

The court shall first consider the issue of whether the

26

defendant was personally addressed at sentencing.  The right to allocution is an integral part of the sentencing process which if not fully afforded to the defendant requires a reversal of the sentence imposed.  <u>Green v. United States</u>, 365 U.S. 301, 304 (1961); <u>United States v. Latimer</u>, 548 F.2d 311, 315 (10th Cir. 1977).  The sentencing court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed.R.Crim.P. 32(i)(4)(A)(ii).

At sentencing, the following colloquy occurred:

> THE COURT: My law clerk suggests--does the Defendant want to say anything in this case?  I've simply been so wrapped up in this case, I forgot about her.
> MR. HANEY: No, thank you.
> THE COURT: All right.
> MR.HANEY: She's aware of her right to address the Court and doesn't wish to exercise that right.
> THE COURT: All right.

The defendant contends that the Tenth Circuit's recent decision in <u>United States v. Benitez-Diaz</u>, 320 Fed.Appx. 868 (10th Cir. 2009) provides support for her argument that the court violated Rule 32. There, the following colloquy occurred:

> THE COURT: Any objection to the proposed sentence by the Government?
> THE GOVERNMENT: No, your Honor.
> THE COURT: By the Defendant?
> DEFENSE COUNSEL: No, sir.
> THE COURT: Did [Defendant] get the word, Ms. Rivera? Any objection to the sentence?
> DEFENDANT: No.

<u>Benitez-Diaz</u>, 320 Fed.Appx. at 874.

The Tenth Circuit concluded that the trial court did violate

Rule 32 and remanded the case for resentencing.  _Id_. at 875.  The error occurred when the trial court merely asked the defendant if he had any objection to the proposed sentence.  _Id_. at 874.  The Tenth Circuit found that the trial court had personally addressed the defendant, but did not ask the defendant if he had any statement he wished to make on his behalf.  _Id_.

The defendant's suggestion that the court violated Rule 32 by failing to address her at sentencing is without merit.  The court directly asked her if she wanted to make any statement.  The mere fact that her counsel responded for her does not constitute a violation of Rule 32.  This case differs from <u>Benitez-Diaz</u> because the court did directly address the defendant and did ask her if she wanted to make a statement.  Thus, <u>Benitez-Diaz</u> provides no support for the circumstances here.  In any event, the failure to follow the requirements of Rule 32(i)(4)(A)(ii) cannot be raised in a § 2255 motion.  <u>Hill v. United States</u>, 368 U.S. 424, 426 (1962).

The defendant's other argument is also without merit.  She contends that her counsel was ineffective in telling her not to speak during sentencing.  As suggested by the government, this claim lacks merit because her counsel's advice or directive was a strategic decision that was reasonable under the circumstances.  The defendant has acknowledged that her counsel advised her to remain silent so she would not damage her chances on appeal.  The court does not find such a decision to be unreasonable.  <u>See</u> <u>Fox v. Ward</u>,

200 F.3d 1286, 1296 (10th Cir.), <u>cert. denied</u>, 531 U.S. 938 (2000); see also <u>Hervis v. United States</u>, 2010 WL 411233 at * 3(D.N.H. 2010) ("[The defense counsel's] recommendation that Hervis remain silent during sentencing, unless addressed directly, is not ineffective assistance of counsel."); <u>Sample v. Pearlman</u>, 2009 WL 2982975 at *5 (W.D.N.Y. 2009) ("There is no requirement that trial counsel speak on behalf of his client at sentencing and it may be a strategic move to remain silent."). Moreover, the defendant has shown no prejudice under <u>Strickland</u>. <u>See</u> <u>Hervis</u>, 2010 WL 411233 at * 3("Hervis does not explain what prejudice he suffered as a result of [his counsel's] advice that he remain silent."). The defendant has made no effort to establish that, if she had said something in mitigation, this court would have given her a lower sentence. She has not proffered what she would have said or how the court would have been persuaded by it. In sum, the court finds no merit to the arguments made by the defendant concerning her allocution before sentencing.

**I. Sentencing Issues**

The defendant contends that her counsel was ineffective at sentencing because he failed to argue (1) in mitigation, and (2) for application of acceptance of responsibility.

The court finds that the underlying claims lack merit so the defendant's counsel is not ineffective for failing to argue them. With regard to mitigation, the court notes that the defense counsel

did seek a downward departure in this case.  The court rejected it.
The defendant has not suggested any reason why the court would have
reduced her sentence.  She points to no facts that would favor
mitigation here.

The court also fails to find that her counsel's failure to
argue for acceptance of responsibility constitutes ineffective
assistance of counsel.  A two-level reduction in offense level is
warranted "[i]f the defendant clearly demonstrates acceptance of
responsibility for his offense...." U.S.S.G. § 3E1.1(a).  "[A]
defendant's decision to exercise his constitutional right to trial
will commonly render him ineligible for a § 3E1.1 reduction."
United States v. Tom, 494 F.3d 1277, 1280 (10th Cir. 2007).  This
conclusion follows from application note 2 of U.S.S.G. § 3E1.1,
which explicitly addresses this situation:

> This adjustment is not intended to apply to a defendant
> who puts the government to its burden of proof at trial
> by denying the essential factual elements of guilt, is
> convicted, and only then admits guilt and expresses
> remorse.  Conviction by trial, however, does not
> automatically preclude a defendant from consideration for
> such a reduction. In rare situations a defendant may
> clearly demonstrate an acceptance of responsibility for
> his criminal conduct even though he exercises his
> constitutional right to trial. This may occur, for
> example, where a defendant goes to trial to assert and
> preserve issues that do not relate to factual guilt
> (e.g., to make a constitutional challenge to a statute or
> a challenge to the applicability of a statute to his
> conduct). In each such instance, however, a determination
> that a defendant has accepted responsibility will be
> based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1 cmt. n. 2.

Under the circumstances of this case, such an argument by defense counsel would have been quickly rejected. The defendant did not go to trial to assert and preserve issues that did not relate to factual guilt. Rather, she denied her factual guilt from the outset and throughout the trial. Far from accepting any responsibility for her criminal conduct, her counsel argued that the government had not proven its case. This was certainly not the rare case where a court could find that a defendant accepted responsibility despite proceeding to trial. See United States v. Ellis, 525 F.3d 960, 964 (10th Cir.), cert. denied, 129 S.Ct. 318 (2008). Given her trial posture, the defendant cannot suggest any scenario that would have entitled her to acceptance of responsibility under § 3E1.1. Thus, it was not unreasonable for her counsel to not pursue this patently meritless claim.

## J.  Forfeiture of Property

The defendant contends her counsel was ineffective at trial, sentencing and on appeal for his failure to challenge the forfeiture of her property. She asserts that her counsel told her not to contest the forfeiture because it would damage her chances on appeal. The government contends that this claim is not cognizable under Strickland because her counsel's advice not to contest the forfeiture was a strategic decision that was reasonable under the circumstances.

The court finds that it lacks authority under § 2255 to

31

consider this claim.  Relief under § 2255 can only be provided to defendants claiming a right to be released from custody, not to defendants challenging restitution or other financial orders related to their criminal sentence.  See <u>United States v. Papa</u>, 97 Fed.Appx. 848, 851 (10th Cir. 2004); <u>see</u> <u>also</u> <u>United States v. Bernard</u>, 351 F.3d 360, 361 (8th Cir. 2003); <u>United States v. Thiele</u>, 314 F.3d 399, 402 (9th Cir. 2002); <u>United States v. Hatten</u>, 167 F.3d 884, 887 (5th Cir. 1999); <u>Blaik v. United States</u>, 161 F.3d 1341, 1342 (11th Cir. 1998); <u>Barnickel v. United States</u>, 113 F.3d 704, 706 (7th Cir. 1997).  Even if we were to consider the ineffective assistance of counsel allegations, the court would find that they lacked merit for the reasons stated by the government.

V.

In sum, the court finds no merit to any of the arguments raised by the defendant.  The court shall deny defendant's motion brought pursuant to 28 U.S.C. § 2255.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. # 311) be hereby denied.

**IT IS SO ORDERED.**

Dated this 19th day of April, 2010 at Topeka, Kansas.

s/Richard D. Rogers

United States District Judge